THOMAS CARTER, Appellant, *v.* W. W. CHAPMAN AND WIFE, Respondents.

## *Appeal from Multnomah County.*

1. The claimant of a donation land claim, under act of Congress of 27th September, 1850, must set the land apart for his own use, and designate it by boundaries with reasonable certainty; and any substantial change in the location will be an abandonment of his claim, and the taking of a new one.
2. A married woman cannot be deprived of her real estate except by her deed.

*L. F. Grover, Esq.*, for appellant.

*Kelly & Chapman*, for respondent.

BOISE, C. J.   In 1850, W. W. Chapman, the husband of Margaret F. Chapman, conveyed block "W" to D. H. Lownsdale.   On the 10th day of February, 1852, D. H. Lownsdale and wife conveyed the same block to Carter, plaintiff.   Since that time, a patent to the land claim, including block W, has been issued to the said Margaret F. Chapman, it being her portion of a donation right to her husband and herself, under act of Congress of 27th September, 1850, donating land to settlers in Oregon.   The complainant claims that, at the time Lownsdale and wife conveyed to him, they were the owners in fee of the land, including block W, as claimants under said act of Congress of 27th September, 1850; and that he got from them by deed an indefeasible title.   He claims that, at that time, Lownsdale and wife had complied with all the requirements of said act of Congress so as to entitle them to the grant of land, including block W.   Complainant asks that the court decree that, as said Margaret F. Chapman has obtained the patent wrongfully, she be declared a trustee of said block W for the use of com-

Carter *v.* Chapman.

plainant. As this is purely a matter of evidence, we have inquired into the facts. It seems that about 1848, or more than four years before the execution of the deed of Lownsdale and wife to Carter, Lownsdale settled on and held a land claim under said act of Congress, lying west of the Portland claim. That then, one Pettygrove was holding and claiming the Portland claim. That the boundaries between these claims were in dispute between claimants Lownsdale and Pettygrove, and that Lownsdale was residing on the disputed ground. In 1849, Lownsdale bought out Pettygrove, and went into actual possession of the Portland claim, as claimant, and abandoned his former claim all but the small portion that was in dispute between him and Pettygrove, and that Lownsdale then for the first time became the claimant of the Portland land claim, including block W. It is contended by the counsel for Carter, that, as Lownsdale actually resided on and culti-vated the disputed tract, which had been claimed by him-self and by Pettygrove, before he bought out Pettygrove, and which was a small strip of land on the west edge of the Portland claim, as held by Lownsdale after his purchase from Pettygrove, such residence and cultivation is a substan-tial compliance with the act of September 27th, 1850; that is, that, if a settler actually reside on and cultivate one corner of six hundred and forty acres of land, claiming it all as a land claim for a time, and then abandon six hundred acres of it, retaining forty, and take six hundred acres more on the other side of his residence, which he obtains by the abandon-ment of another settler, this latter is, in contemplation of law, the same claim. We think this view is erroneous; it would be taking substantially a new claim. For instance, to take a donation land claim, a person must segregate his claim from the rest of the public domain, and fix its bound-aries with reasonable certainty, so that others may know what land he claims, and be enabled to take claims adjoining his. The claimant must also be in actual legal possession of

Carter *v.* Chapman.

the land he claims, and he cannot be said to be in possession of land he does not claim; he must exercise over it acts of ownership such as would make his possession *adverse.* It cannot be said that Lownsdale exercised acts of ownership over the Portland claim until after he bought it of Petty-grove, and went into possession under that purchase; for, prior to that time, Pettygrove was in possession, and Lowns-dale acknowledged that possession and recognized him as rightful owner. It is clear from the evidence that Lowns-dale's right to the land, including block W, did not accrue until after the purchase from Pettygrove in 1849; conse-quently, Lownsdale had not, at the time he and wife gave the deed, resided on and cultivated the land for four years, as the law of 1850 required to perfect a right to the land. This disposes of this part of the case in favor of the defend-ants. We here remark that, as this question is settled by the evidence, the court does not intend to express an opinion as to what would be its holding had the facts been as claimed by the complainant, as that would involve questions of importance affecting our land system in this State. These questions are left until they are more fully presented.

There is another matter relied on by the plaintiff, which is, that the deed of Chapman to Lownsdale estops the title to Mrs. Chapman, she having had notice of the deed before her title from the United States government became per-fected. On this point the evidence leaves the question of notice in doubt. We think it makes no difference whether she had notice or not. This land having been lawfully granted to her, and she being a married woman, the title cannot be taken from her, except by her deed properly exe-cuted.

The decree is affirmed.